UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

SUSAN MARIE MARS,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

18-CV-6227

DECISION AND ORDER

On March 19, 2018, the plaintiff, Susan Marie Mars, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled. Docket Item 1. On September 24, 2018, Mars moved for judgment on the pleadings, Docket Item 8; on November 23, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 11; and on December 14, 2018, Mars replied, Docket Item 12.

For the reasons stated below, this Court denies Mars's motion and grants the Commissioner's cross-motion.

## **BACKGROUND**

### I. PROCEDURAL HISTORY

On February 11, 2015, Mars applied for disability insurance benefits. Docket Item 7 at 120. She claimed that she had been disabled since October 9, 2014, due to bipolar disorder, depression, high cholesterol, and high triglycerides. *Id.*

On February 22, 2013, Mars received notice that her application was denied because she was not disabled under the Act. *Id.* at 134-38. She requested a hearing before an administrative law judge ("ALJ"), *id.* at 140-44, which was held on October 12, 2016, *id.* at 87. Later, Mars submitted additional material to the ALJ, and the ALJ requested supplemental opinions from a medical expert and a vocational expert. *Id.* at 31, 59. The ALJ then granted Mars's request for a supplemental hearing, which was held on January 24, 2017. *Id.* at 57, 59, 31-32. On February 1, 2017, the ALJ issued a decision confirming the finding that Mars was not disabled. *Id.* at 51. Mars appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5-10.

## II.   RELEVANT MEDICAL EVIDENCE

Mars raises only one issue before this Court: that the ALJ erred in failing to "properly weigh the treating physician's opinions pursuant to the treating physician rule." *See* Docket Item 8-1 at 16. Therefore, although Mars was examined by several different providers, only one—Bernedette Minnella, M.D., a primary care physician—is most significant to this Court's review of Mars's claims.

The ALJ determined that Dr. Minnella was Mars's treating physician. Docket Item 7 at 35, 38, 44. Mars saw Dr. Minnella regularly both before and during the alleged period of disability. *See, e.g., id.* at 444-47 (April 13, 2015); 455-57 (Oct. 24, 2014); 458-60 (Aug. 28, 2012); 461-63 (Oct. 4, 2011); 464-65 (July 18, 2011); 536-37 (Sept. 22, 2016); 538-39 (Aug. 8, 2016); 540-41 (June 14, 2016); 542-43 (May 9, 2016) 544-46 (Apr. 4. 2016); 547-49 (Mar. 7, 2016); 550-51 (Mar. 1, 2016); 552-53 (May 29, 2015). On April 16, 2015, and again on October 10, 2016, Dr. Minnella completed medical

2

source statements. *Id.* at 441-43, 532-35. The record also includes a letter from Dr. Minnella dated March 7, 2016, with additional opinions. *Id.* at 484. In January 2017, Dr. Minnella completed two more medical source statements—one addressing Mars's physical limitations, *id.* at 753-63, and one addressing her mental limitations, *id.* at 763-73.

## III.    THE ALJ'S DECISION

In denying Mars's application, the ALJ evaluated Mars's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any in the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical

3

impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. See 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If the claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). More specifically, the Commissioner bears the burden of proving that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Mars had not engaged in "substantial gainful activity" since October 9, 2014, the alleged onset date. Docket Item 7 at 34. At step two, the ALJ found that Mars had the following severe impairments: "polycythemia rubra vera, and mental impairments described as anxiety disorder, depressive disorder, and polysubstance abuse in reported remission." Id. At step three, the ALJ determined that Mars did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Id.

In assessing Mars's RFC, the ALJ determined that Mars could perform "a range of medium work" as defined in 20 C.F.R. § 404.1567(c).[1] *Id.* at 36. Specifically, the ALJ found that Mars

> could lift/carry fifty pounds occasionally and twenty-five pounds frequently. She could sit eight of eight hours, up to four hours at a time; stand/walk six of eight hours, up to three hours at a time. She should never work at unprotected heights or climb ladders or scaffolds. She could occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl. She could work with moving mechanical parts and occasionally operate a motor vehicle (i.e., Ex. B21F). Secondary to mental impairments, the claimant could understand, remember, and carry out simple instructions. She could sustain attention and concentration for two-hour segments of time in an eight-hour day. The claimant could interact on a superficial basis with the public. She should not perform any work requiring negotiations, arbitration, or confrontation. She could respond appropriately to usual work situations and to changes in a routine work setting where the focus is performing tasks in a project-oriented work setting. She should avoid fast pace or high production goal work (i.e., Ex. B22F).

*Id.*

At step four, the ALJ determined that Mars "is unable to perform any past relevant work." *Id.* at 48. But at step five, the ALJ determined that the Commissioner sustained her burden of establishing that Mars had the RFC to perform "jobs that exist in significant numbers in the national economy." *Id.* at 49. Specifically, the ALJ credited the vocational expert's testimony that Mars could perform jobs such as a laundry worker, an order filler, a hand packager, a cook helper, a cleaner, or a sandblaster. *Id.* at 49-50.

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, [the agency] determine[s] that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

5

In formulating Mars's RFC, the ALJ acknowledged that Mars "sees Dr. Minnella, primary care[,] regularly." *Id.* at 38. The ALJ addressed opinion evidence in the record, including Dr. Minella's treating source opinions, by bifurcating the opinion evidence. *Id.* at 44-48. She first evaluated the opinions regarding Mars's physical impairments, *id.* at 44-45, and she then evaluated the opinions regarding Mars's mental impairments, *id.* at 45-48.

### A. ALJ's Analysis of Dr. Minnella's Opinions Regarding Mars's Physical Impairments

The ALJ noted that Dr. Minnella "provided several work assessments." *Id.* at 44. Specifically, she considered the opinions regarding Mars's physical impairments outlined in Dr. Minnella's assessments dated April 16, 2015, and January 16, 2017. *Id.* The ALJ determined that

> [t]hese assessments are afforded little weight, as they are not consistent with the overall record of mostly mild physical exam findings, including Dr. Minnella's own repeated advice to increase activity. The evidence indicates the claimant is independent in physical functioning; she travels as needed. The assessments appear to be overly sympathetic to the claimant based on self-reports and possible financial considerations; as noted the overall file is devoid of significant clinical findings. Only iron supplement was prescribed for reported fatigue and dietary suggestions; her treatment was not altered. The undersigned has considered postural and workplace hazard limitations in the [RFC], to the extent they are supported by the evidence.

*Id.*

### B. ALJ's Analysis of Dr. Minnella's Opinions Regarding Mars's Mental Impairments

Similarly, the ALJ acknowledged that Dr. Minnella "provided several additional work assessments[] regarding [Mars's] mental impairments." *Id.* at 46. With respect to Dr. Minnella's assessment dated March 7, 2016, the ALJ determined that

6

> [t]his [opinion] is given limited weight. The undersigned notes that while Dr. Minnella would be familiar with the claimant's medical conditions due to her treatment of the claimant, Dr. Minnella is a primary care physician, not a mental health treatment provider. It appears the mental health limitations Dr. Minnella found[] were based on self-reports. Notwithstanding, [the] only recommendations noted were to continue therapy, psychiatric medication management, and take all medications as directed.

*Id.* With respect to Dr. Minnella's assessment dated October 10, 2016, the ALJ determined that

> [t]his assessment is given little weight as to any work limiting psychological problems. Notably the claimant was "no" not compliant with treatment and to the extent significant problems were indicated, it would seem reasonable that Dr. Minnella would have recommended more than infrequent conservative follow up.

*Id.* The ALJ separately weighed the "[a]ddendum" to the assessment dated October 10, 2016. *Id.* Specifically, the ALJ said that it

> is given little weight. As discussed above, the absence of clinical findings and conservative follow up at two-to-three-month intervals for mental health[] is inconsistent with work precluding limitations, and Dr. Minnella's opinion that the claimant is "100% disabled" by her mental health conditions is inconsistent with her advice that the claimant seek further information regarding possible interferon side effects with her psychiatrist, deferring her own assessment of the claimant's mental health to Dr. Seger.

*Id.* Finally, with respect to the opinions in Dr. Minnella's assessment dated January 19, 2016, the ALJ

> afford[ed] these opinions limited weight. The [RFC] includes limitations for exposure to workplace hazards, along with limitations on interactions with others, and a range of routine repetitive work, which is claimant favorable. However, Dr. Minnella's opinions in Exhibit B24F are internally inconsistent, i.e., headaches appear to have resolved with physical therapy activity (Ex. 23F), remote hospitalization records noted alcohol, Xanax, and THC with possible dependence (Ex. B20F), the claimant maintained a home and traveled as needed, etc. The claimant was reportedly adamant in denying any drug use. The assessment by Dr. Minnella included the doctor's beliefs based [on] the claimant's statements to her, as mentioned above. The assessments are not supported by the overall record of objective medical records, indicating improvement and independent functioning when avoiding substances and taking all medications as directed, with

7

conservative medication management otherwise indicated, with no further treatment or significant limitations supported. There does not appear to be more treatment required than monitoring and routine follow up

*Id.* at 47.

## **STANDARD OF REVIEW**

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

8

## **DISCUSSION**

As noted above, Mars makes only one argument in support of her motion for judgment on the pleadings: she argues that the ALJ failed to follow the treating physician rule when evaluating Dr. Minnella's opinions. Docket Item 8-1 at 16-21.

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled to controlling weight." *Id.* "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, it must determine how much weight, if any, to give it." *Id.* "In doing so, it must 'explicitly consider' the following, nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* at 95-96 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision of the weight it gives the treating source's medical opinion.'" *Id.* at 96 (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)).

"An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight . . . is a procedural error." *Id.* "If 'the Commissioner has not otherwise provided good reasons for its weight assignment,' [courts] are unable to conclude that the error was harmless and consequently remand for the ALJ to 'comprehensively set forth its reasons.'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

In this case, the ALJ indeed complied with the treating physician rule when she carefully and comprehensively evaluated Dr. Minnella's opinions. The Court addresses the ALJ's evaluation of Mars's physical and mental impairments in turn.

### A. Dr. Minnella's Opinions Regarding Mars's Physical Impairments

The ALJ determined that Dr. Minnella's opinions regarding Mars's physical impairments were not entitled to controlling weight because they were "not consistent with the overall record of mostly mild physical exam findings, including Dr. Minnella's own repeated advice to increase activity." Docket Item 7 at 44. That determination is supported by the record. For example, treatment notes from Mars's visit with Dr. Minnella on April 13, 2015, mention some mental health issues but do not note any physical issues. *Id.* at 445-46. On the contrary, Dr. Minnella encouraged Mars to increase her exercise and activity to address her health issues. *Id.*

Moreover, an ALJ need not give a treating physician controlling weight when "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32. Here, Harbinder Toor, M.D., a consultative examiner, examined Mars on May 5, 2015, and determined that she had "no limitation for any fine and gross manual activities." Docket Item 7 at 414. Likewise, Eric Puestow, M.D., a medical expert,

10

reviewed the medical evidence and completed a medical source statement in which he opined that Mars's work-related physical limitations were not substantial. *Id.* at 719-28. In light of all that, the ALJ did not err in limiting the weight given to Dr. Minnella's opinions regarding Mars's physical limitations.

Although the ALJ could have done a better job explicitly applying the *Burgess* factors, "a searching review of the record" assures this Court that Mars "received the rule's procedural advantages." *Halloran*, 362 F.3d at 32. First, the ALJ explicitly considered the first and third *Burgess* factors. With respect to the first factor—the frequency, length, nature, and extent of treatment—the ALJ acknowledged that Mars "sees Dr. Minnella, primary care[,] regularly." Docket Item 7 at 38. The ALJ's consideration of the third factor—the consistency of the opinion with the remaining evidence—is incorporated into her analysis of why she did not give Dr. Minnella's opinions controlling weight. Indeed, it was the very reason that the ALJ afforded the opinions only limited weight.

With respect to the second factor, the ALJ addressed the limited medical evidence supporting Dr. Minnella's opinion regarding Mars's physical impairments. *Id.* at 44. And the ALJ's analysis is supported by the record. For example, in Dr. Minnella's statement dated January 16, 2017, she addressed the question: "What are the medical findings that support this assessment?" Docket Item 7 at 758. In response, Dr. Minnella noted "[a]bnormal labs—iron deficiency weakness and bipolar. Refer to psychiatry assessment." *Id.* But this Court cannot find any such "abnormal labs" in the record. And iron deficiency alone offers little support for the work-related physical limitations emphasized in Dr. Minnella's opinions. What is more, the fact that Dr.

11

Minnella cross-references her psychological assessment to support Mars's physical impairments suggests that Dr. Minnella had limited medical findings to support her opinions.

Although the ALJ did not explicitly discuss the final *Burgess* factor—whether Dr. Minnella was a specialist—the failure is harmless in light of the fact that Dr. Minnella is not a specialist. And the ALJ did explicitly address Dr. Minnella's status as a primary care physician when evaluating the psychiatric opinions. *Id* at 46.

### B. Dr. Minnella's Opinions Regarding Mars's Mental Impairments

The ALJ gave Dr. Minnella's opinions regarding Mars's mental impairments either "limited weight" or "little weight." Docket Item 7 at 46-47. "The opinion of a claimant's treating physician as to the nature and severity of an impairment is given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Estrella*, 925 F.3d at 95 (quoting *Burgess*, 537 F.3d at 128). On the other hand, "[i]f a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)).

In this case, the ALJ did not give Dr. Minnella's opinions regarding Mars's physical impairments controlling weight because they were largely "based on self-reports" or "based [on] the claimant's statements to her." Docket Item 7 at 46-47. And the record again supports that conclusion. For example, Dr. Minnella's assessment

12

dated January 19, 2017, asked what factors, such as "medical signs, [or] laboratory findings . . . support [her] assessment"; in response, she said only "when in bipolar crisis unable to function/disorganized thought process, mood instability" and "stress related situations/crowd result in more anxiety." *Id.* at 765. On the basis of these responses, it was reasonable for the ALJ to conclude that Dr. Minnella's assessment was based on Mars's self-reporting and not on clinical or other mental-health related findings.

As noted above, an ALJ need not give the opinions of a treating physician controlling weight when "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32. Here, Christine Ransom, Ph.D., a consulting psychiatrist, evaluated Mars on May 19, 2015. Docket Item 7 at 416. Dr. Ransom concluded that Mars's evaluation was "consistent with mild psychiatric conditions which would not significantly interfere with [her] ability to function on a daily basis. *Id.* at 418. The ALJ permissibly relied on and credited Dr. Ransom's opinion. *Id.* at 46. Moreover, another psychologist, Joseph Steiner, Ph.D., reviewed the evidence and determined that Mars's mental impairments were largely mild and at worst moderate. *Id.* at 730-31. The ALJ permissibly relied on and credited this opinion as well. *Id.* at 47-48. Because the ALJ properly determined that Dr. Minnella's opinions regarding Mars's mental impairments were not supported by clinical evidence and were inconsistent with other substantial evidence in the record—including opinion evidence from psychologists—the ALJ did not err in failing to give her opinions controlling weight.

And the ALJ applied the *Burgess* factors when assigning weight to Dr. Minnella's opinions regarding Mars's mental impairments. With respect to the first and fourth

13

factors—the frequency, length, nature, and extent of treatment and whether the physician is a specialist—the ALJ explicitly noted that "while Dr. Minnella would be familiar with the claimant's medical conditions due to her treatment of the claimant, Dr. Minnella is a primary care physician, not a mental health treatment provider." *Id.* at 46. The ALJ also explicitly addressed the second and third *Burgess* factors—the amount of medical evidence supporting the opinion and the consistency of the opinion with the remaining medical evidence—in explaining why Dr. Minnella's opinions regarding Mars's mental impairments were not given controlling weight. All in all, the balance of those factors adequately explains the ALJ's decision to give Dr. Minnella's opinions in this area limited or little weight.

In sum, Dr. Minnella treated Mars for a long time and provided several medical source opinions. But the quantity of her opinions does not reflect their quality, and there is no indication that, as Mars argues, the ALJ failed to apply the treating physician rule when determining that the evidence did not support Mars's claim of disability. In fact, the ALJ's analysis honored the treating physician rule. And her acceptance of additional evidence from Mars—as well as her obtaining supplemental opinions and conducting a supplemental hearing—evidence the careful and thoughtful consideration the ALJ gave to this matter.

## **CONCLUSION**

For the reasons stated above, Mars's motion for judgment on the pleadings, Docket Item 8, is DENIED, the Commissioner's cross-motion for judgment on the pleadings, Docket Item 11, is GRANTED, the complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: September 9, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE